

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Hon. J. E. McDonald, Commissioner
Department of Agriculature
Austin, Texas

Dear Sir:

Opinion No. O-1220
Re: Would the Department of Agriculture
still have authority to use the fees
provided for in H.B. 12 for the pur-
poses provided for in the appropria-
tion bill in spite of the Governor's
veto thereof?

We are in receipt of your letter of August 2,
1939, in which you call our attention to the following
situation and request an opinion in respect thereto:

"House Bill No. 12, Acts of the First Called
Session of the Forty-fifth Legislature, provides
that lease fees received from the placement of
State owned Jacks and Stallions be placed in the
Treasury where it is set up as a Special Fund
for the administration of the Jack and Stallion
work.

"The recent Legislature in the Department-
al Appropriation Bill, set up and itemized the
following:

"Bookkeeper . . . . . . . . . . $1,400.00
Inspector . . . . . . . . . . 1,800.00
Rent, lights, heat,
contingent, etc . . . . . . . 1,950.00
Travel expense . . . . . . . . 3,000.00

for each of the fiscal years ending August 31,
1940 and August 31, 1941.

"The Governor vetoed the $1,500.00 item
and the $3,000.00 item.

"Please advise whether or not the Legislature or the Governor of the State has the authority to disregard the provisions of said House Bill No. 12, and if either the Legislature or the Governor has presumed to change the provisions of House Bill No. 12, their act will stand in opposition to the provisions of said bill.

"To be more direct, since the Legislature set up these items in accordance with the terms of the law, would this Department still have the authority to use the fees for the purposes provided for in the Appropriation Bill in spite of the Governor's veto thereof?"

House Bill No. 12, ch. 23, p. 1794, General & Special Laws, Forty-fifth Legislature, First and Second Called Sessions, 1937, is quoted in full as follows:

"Sec. 1. From and after the date of September 1, 1937, the Commissioner of Agriculture of the State of Texas is hereby directed and authorized to distribute throughout the State of Texas, on a lease basis as hereinafter provided, the jacks and stallions purchased by the State of Texas under the terms and provisions of Acts of the Regular Session, Forty-third Legislature, chapter 163, Page 433, as amended by Acts of the Forty-third Legislature, First Called Session, Chapter 10, Page 32, And said Commissioner of Agriculture is further directed and authorized to name some suitable person, experienced in the handling of jacks and stallions, as caretaker of such jack or stallions. The Commission of Agriculture shall adopt and carry out reasonable rules and regulations with respect to the leasing and distribution, care, use and maintenance of such animals. Provided further that the title of all such jacks and stallions hereinbefore mentioned shall be and remain in the State of Texas. Provided further that in the event the Commissioner of Agriculture is unable to place any of such

animals as herein provided due in any manner
to defects or unfitness for breeding purposes,
then the Commissioner of Agriculture is hereby
authorized and directed to turn such animals
over to the State Board of Control, who shall
dispose of same to the best interest of the
State.

"Before any of the jacks or stallions are
leased and distributed as herein provided, the
Commissioner of Agriculture shall allocate and
tender to the Texas Prison System two jacks and
one stallion and after said jacks and stallion
have been accepted by the Texas Prison Board,
the Commissioner of Agriculture shall thereafter
exercise no control or management over such ani-
mals. Such animals shall thereafter remain and
be the property of the Texas Prison System for
its use and purposes, and said jacks and stal-
lion are to be selected by the Commissioner of
Agriculture and General Manager of the Texas
Prison System from those jacks and stallions
now owned by the State of Texas under the provi-
sions of Chapter 10, Acts of the First Called
Session, Forty-third Legislature. And all ex-
penses incurred by the Commissioner of Agricul-
ture in delivering said jacks and stallion to
the Texas Prison System shall be borne by said
system.

"Sec. 2. From and after the effective date
of this Act the Commissioner of Agriculture shall
distribute the jacks and stallions aforesaid
throughout the State of Texas where there is most
need shown to competent and capable caretakers
who shall agree and pay to the State of Texas
the sum of Thirty Dollars ($30) in advance as an
annual rental for the use of such jack or stal-
lion, as the case may be, and who shall first
enter into a written contract with the Commis-
sioner of Agriculture all such conditions and
terms as may be determined by the Commissioner.
In addition thereto each keeper shall be required

to enter into a bond with two or more good and sufficient sureties, payable to the State of Texas, upon the approval of the Commissioner of Agriculture, conditioned that such caretaker shall in good faith, feed, water, care for and properly handle such animals. Such bond to be in the sum of not less than the market value of said animal or animals as determined by the Commissioner of Agriculture.

"The Commissioner of Agriculture is hereby directed to contract with such keepers or caretakers to terminate on July 1 of each year such contracts to be terminable before that time when in the opinion of the Commissioner of Agriculture, or his agents, such animals are not being properly cared for as provided in the terms of such contracts and no lease shall extend for a period to exceed one year.

"The contract hereinabove provided for shall in addition to the provisions herein set forth include one which will permit the use of such jack or stallion by said caretaker for the purposes to which he may be assigned in said contract and in no event shall the keeper or caretaker make a service charge of more than Ten Dollars ($10) for each foal and such caretaker or keeper shall personally be liable for all refunds in guaranteeing a foal and in no event shall the State of Texas be liable directly or indirectly therefor. And it is expressly provided that the Thirty Dollars ($30) paid as herein provided shall be all the demand or claim that the State of Texas shall have against such keeper or caretaker for rendering the services herein provided and the sum or sums herein provided as a charge for breeding fees shall be the only compensation said keeper or caretaker may claim of or from the State of Texas therefor.

"Sec. 3. The money derived from the leasing of the animals hereinabove mentioned shall be deposited by the Commissioner of Agriculture

in the State Treasury where it shall be set up
as a 'Special Jack and Stallion Fund' to be used
by the Commissioner to pay the salaries of two
(2) competent supervisors at not to exceed
Eighteen Hundred Dollars ($1800) per year each
for salaries and who shall receive the actual
and necessary traveling expenses while away
from Austin in the performance of their duties,
which expenses shall not exceed amounts allow-
ed other state employees under the terms and
provisions of Senate Bill 138, Acts of the Forty-
fifth Legislature, Regular Session, 1937, and
in no event shall the salaries and expenses here-
in authorized exceed the amount collected an-
nually from the lease or hire of animals as
herein provided.

'Sec. 4.  All moneys now on hand and accru-
ing to the Jack and Stallion Account under H.B
779, Acts of the Forty-fourth Legislature, Reg-
ular Session, and amended by H. B. 8, Chapter 495,
Forty-fourth Legislature, Third Called Session,
are hereby transferred to the Special Jack and
Stallion Fund to be used by the Commissioner of
Agriculture for making refunds on breedings here-
tofore reported in conformity with refunding
provisions of H.B. 779, Acts of the Regular Ses-
sion of the Forty-fourth Legislature, and for
the payment of all other expenses incurred in
the administration of this Act, subject to the
biennial appropriation for the year ending Aug-
ust 31, 1939.  The State Comptroller and the
State Treasurer are hereby authorized and di-
rected to make such transfers. (Underscoring
ours).

"After transferring from said Special Rac-
ing Fund the said twenty-five per cent (25%)
going to the State Available School Fund and
after transferring from said Special Racing Fund
all moneys on hand and accruing to the Special
Jack and Stallion Fund, the balance then remain-
ing in said Special Racing Fund until it becomes
exhausted, shall be used for the payment of the
appropriations by the Legislature for the sup-
port and maintenance of the State Department of

Agriculture as said appropriations for the Department shall be fixed and allowed by the Legislature of the State of Texas from time to time. It is the intent of the Legislature hereby that the above distribution shall immediately be made and the money so transferred shall be come available now and for any and all appropriations made by the Regular Session of the Forty-fifth Legislature for the support and maintenance of the State Department of Agriculture and that the General Revenue Fund shall not be drawn on until all moneys in the Special Racing Fund shall be come exhausted, and all unexpended balances remaining on hand, at the end of the current biennium ending August 31, 1937, shall be carried over in the succeeding biennium to the use and benefit of the said State Department of Agriculture, as provided by law; <u>providing however, that no refunds of breeding fees shall extend beyond January 1, 1938.</u> (Underscoring ours).

"Sec. 5. The fact that a Special Session of the Forty-fifth Legislature is now in session to consider the provisions set forth hereinabove created an emergency and an imperative public necessity that the Constitutional Rule providing a bill to be read on three several days in each House be suspended, and said Rule is hereby suspended, and that this Act shall have effect and be in force from and after its passage, and it is so enacted."

Senate Bill No. 427, Forty-sixth Legislature, the General Departmental Appropriation Bill, under Agriculture Department, provides, in part:

". . . JACK AND STALLION DIVISION . . .
64. Salaries and expenses in the Special Jack-Stallion Fund, H.B. No. 12, First Called Session, Forty-fifth Legislature.

For the years ending . . . .August 31, August 31,
                                <u>1 9 4 0</u>   <u>1 9 4 1</u>

| (Continued) - | August 31, 1940 | August 31, 1941 |
|---|---|---|
| 64a. Bookkeeper ......... | $ 1,500.00 | $ 1,500.00 |
| 64b. Inspector ......... | $ 1,800.00 | $ 1,800.00 |
| 64c. Rent, heat, light, postage, printing, telephone, supplies and contingent, etc. | $ 1,950.00 | $ 1,950.00 |
| 64d. Travel Expense .... | $ 3,000.00 | $ 3,000.00" |

Exercising the veto power conferred upon him by Section 14, Article IV of the Constitution of the State of Texas, the Governor objected to and struck out items 64a (Bookkeeper) and 64d (Travel Expense).

Section 3 of H.B. No. 12 of the Forty-fifth Legislature, First Called Session, above quoted, provided for two (2) inspectors and for "actual and necessary traveling expenses while away from Austin in the performance of their duties, etc." for said inspectors or supervisors.

It will be noted from an examination of the Appropriation Bill that the Forty-sixth Legislature appropriated a salary for only one supervisor, and the Governor later eliminated the position of bookkeeper and the traveling expense fund.

The failure of the Forty-sixth Legislature to make an itemized appropriation for a salary for the other inspector and the veto of the Governor of the expense item and the item of a bookkeeper do not repeal the terms and provisions of H. B. No. 12, supra.

39 TEX. JUR. 130

"Generally speaking the Legislature may repeal any statute at will. But it has been observed that the Constitution does not authorize the repeal of a statute through the medium of a

general appropriation bill."

CONLEY vs. DAUGHTERS OF THE REPUBLIC, 151 S.W.
877, reversed on other points 156 S.W. 197, re-
hearing overruled 157 S.W. 937

"It was never contemplated that an Act be
repealed by an item in an appropriation bill
* * *"

But while there has been no repeal of H.B. No.
12, it is evident from a consideration of the General De-
partmental Appropriation Bill before and after the Gov-
ernor's veto of certain items therein, that there has
been no itemized appropriation of money for the salary
of a second inspector.

The effect of the failure of the appropriation
is that H. B. 12 authorizes the Commissioner to appoint
two (2) inspectors, but there is a specific appropriation
for the salary of only one of them.

Moreover, the Governor, through the exercise
of his veto power, has stricken out of the appropriation
for the Jack and Stallion Division of the Department of
Agriculture items 64a (Bookkeeper) and 64d (Travel Ex-
pense).

There is no question as to the power of the
Governor to veto specific items in the General Depart-
mental Appropriation Bill.

ARTICLE 4, SECTION 14, OF THE CONSTITUTION OF
THE STATE OF TEXAS

"* * * If any bill presented to the Gov-
ernor contains several items of appropriation
he may object to one or more of such items,
and approve the other portion of the bill, at
the time of signing it, a statement of the
items to which he objects, and no item so ob-
jected to shall take effect. * * *"

Full effect, however, must be given to the pro-

visions and riders of Senate Bill No. 427, insofar as
they relate to the appropriation for the Jack-Stallion
Division of the Department of Agriculture for the bien-
nium August 31, 1939, to August 31, 1941.

In Senate Bill No. 427, the appropriation
Bill under consideration, in addition to the four list-
ed items under the heading, Special Jack-Stallion Fund,
(two of which were struck out by the Governor), there
are two other pertinent provisions relating to H. B. No.
12, First Called Session, Forty-fifth Legislature:

"In view of the fact that fees collected
under H. B. 12, Acts of the First Called Session
of the Forty-fifth Legislature are received dur-
ing the months of July and August, all balances
on hand in this fund at the end of the fiscal
years, August 31, 1939 and August 31, 1940, are
hereby reappropriated for the enforcement of
this Act."

"For each of the fiscal years ending
August 31, 1940, and August 31, 1941, all fees
and/or unexpended balances which have been re-
ceived and which may be received by virtue of
Chapter 7, Article 153, Revised Civil Statutes,
1925; Chapter 3 of Title 4, Revised Civil Stat-
utes, 1925; Article 5764, Revised Civil Stat-
utes, 1925; Article 5695, Revised Civil Stat-
utes, 1925; Chapter 287, Regular Session, Forty-
second Legislature; Chapter 304, Regular Ses-
sion Forty-first Legislature and House Bill No.
12, First Called Session, Forty-fifth Legisla-
ture and any amendments to any of said acts are
hereby appropriated, after they shall have been
deposited in the State Treasury, to the Depart-
ment of Agriculture to be used by said Depart-
ment for the enforcement of the abovementioned
Acts and for the operation and maintenance of
said activities as hereinabove specifically
itemized and in no event shall any of these
fees be used otherwise." (Underscoring ours).

It is provided in the general rider to S. B.

427 that "all surplus fees, receipts, special funds, or other available funds on hand at the end of each year of the biennium shall revert to the General Revenue Fund of the State unless otherwise prohibited by law or otherwise provided herein." The above quoted special riders indicate that the General Departmental Appropriation Bill specifies that the Special Jack-Stallion Fund shall not revert to the General Revenue Fund at the end of each year.

It is evident that there are really two appropriations for the Jack-Stallion Division of the Department of Agriculture, First, the itemized appropriation and the appropriation of "all fees and/or unexpended balances". The latter are appropriated "for the enforcement" of H. B. 12 and "for the operation and maintenance of said activities as hereinabove specifically itemized and in no event shall any of these fees be used otherwise".

The Governor in vetoing two items from the specific appropriation did not in any way disturb the appropriation of "all fees and/or unexpended balances". It was evidently the intention of the Legislature and the Governor that the balance of the money in the Special Jack-Stallion Fund be used for purposes necessary to the enforcement of the Act, as well as "for the operation and maintenance of said activities" as are "specifically itemized" in the appropriation for the Jack Stallion Division.

The next question which presents itself for consideration in view of the lump sum appropriation of the balance of the Jack Stallion Fund for carrying out the provisions of the Jack Stallion Act, H.B. No. 12, Forty-fifth Legislature, is whether or not the approval of the Board consisting of the Governor, the Attorney General and the State Treasurer must be obtained before the Jack Stallion Division may expend any of the appropriated balance in said fund for the purposes essential to the carrying out of the functions of the division.

This Board and its jurisdictions are provided for in the "Limitation of Payments" clause in the general

rider (Section 2) to the General Departmental Appro-
priation Bill, Senate Bill No. 427 of the Forty-sixth
Legislature. It reads as follows:

"Limitation of Payments. Except as other-
wise provided, whenever, by virtue of the provi-
sions of this Act, items are to be paid out of
fees, receipts, special funds or out of other
funds available for use by a department, it is
the intention of the Legislature to limit expend-
itures out of said fees, receipts, special funds
or other available funds to the purposes and in
the amounts itemized herein, and it is so pro-
vided. If, however, the amount of the fees,
receipts, special or other available funds here-
in referred to are more than sufficient to pay
the items herein designated to be paid there-
from, the department to which the said fees,
receipts, special funds or other available
funds are appropriated may, if necessary to
adequately perform the functions of said depart-
ment, use any portion of said surplus fees, re-
ceipts, special funds or other available funds;
provided, however, that before doing so the
head of such department shall, under oath, make
application, jointly, to the Governor, the At-
torney General and the State Treasurer setting
forth in detail the necessity for using such
surplus fees, receipts, special funds or other
available funds and itemizing the purposes for
which the same are to be used. Unless the ap-
plication is approved by at least two of the
three persons aforementioned, the surplus fees,
receipts, special funds or other available
funds shall not be expended. Any item set out
in the application can be deleted by decision
of a majority of the three persons aforemention-
ed. All applications which are approved or
denied must be signed by those voting to approve
or deny same. Said applications, after approv-
al or rejection, shall be filed with and retained
by the State Auditor for a period of six months
after the expiration of the biennium ending

August 31, 1941, and shall remain open to pub-
lic inspection during said period. All surplus
fees, receipts, special funds, or other avail-
able funds on hand at the end of each year of
the biennium shall revert to the General Reve-
nue Fund of this State unless otherwise prohib-
ited by law, or unless otherwise provided here
in. No salary paid additional employees shall
exceed the amount herein appropriated for simi-
lar positions. All disbursements shall be made
on warrants issued by the Comptroller on the
State Treasury."

The above question is answered in the negative
on the authority of conference opinion No. O-1321 of
this department by Hon. Richard W. Fairchild, Assistant
Attorney General. In this opinion the "Limitation of
Payments" Clause is exhaustively analyzed, its consti-
tutionality upheld, and the Board's authority defined
as relating only to surpluses in funds dedicated or de-
voted to a department's use and benefit, but not appro-
priated to said department elsewhere than in the
"Limitation of Payments" Clause.

Opinion No. O-1321 states that in the Gener-
al Departmental Appropriation Bill, i.e., Senate Bill
No. 427 of the Forty-sixth Legislature "there are two
separate and distinct classes of appropriations made
from fees, receipts, and special funds".

These two separate and distinct classes are de-
scribed in language upon which we cannot improve in the
following paragraph of the opinion:

"We are thus confronted with the problem
of whether the Legislature intended the "limita-
tion of Payments" Clause to apply only to those
instances where it has by the special rider ap-
pended to the particular departmental appropria-
tion, appropriated the surplus in the special
fund to the use and benefit of the particular
department, or, on the other hand, were the words
"except as otherwise provided" intended to elim-
inate these specific appropriations of the surplus
from the application of the "Limitation of

Payments" clause, and was the clause, therefore, intended as a conditional appropriation of those surpluses which might exist in special funds, in instances where the Legislature had, by rider to the particular departmental appropriation, made no effort to place such surpluses at the disposal of the particular department?"

It will be observed that the surplus in the Jack-Stallion Fund created under House Bill No. 12 of the Forty-fifth Legislature falls within the first classification since it is appropriated to the use and benefit of the Jack Stallion Division by the special r der appended to the Department of Agriculture appropriation.

The question as to whether the "Limitation of Payments" clause applies to this class of surplus is answered in opinion No. 0-1321 as follows:

"* * * It would seem to be manifest that the Legislature did not intend that the 'Limitation of Payments' clause should apply to such surpluses as were definitely appropriated by the Legislature to the use of a particular department by special rider to the departmental appropriation. To hold otherwise, would be to say that the Legislature intended to create an absurd and mischievous situation calculative to impair materially the functions of State Government, and to result in great inconvenience in its administration."

It is, therefore, our opinion that the balance of the Jack-Stallion Fund appropriated in a lump sum to the benefit and use of the Department of Agriculture is not subject to the "Limitation of Payments" clause and the Jack Stallion Division is not obligad to obtain the approval of the "Limitation of Payments" Board to legitimate expenditures of moneys in said surpluses.

The final question to be answered is; for what purposes are the moneys in the itemized lump sum appropriation, consisting of a surplus in the Jack Stallion Fund, unavailable?

In the first place, the balance of the fund cannot be used for supplementing the specific items for which a definite sum has been appropriated, i. e., item 64-b (an inspector at estimated salary of $1800) and 64-c (rent, heat, light, postage, telephone, printing supplies and contingent $1950. annually). An express prohibition to this effect is contained in the section of the General Rider to the Departmental Appropriation Bill headed "Salary and Other Provisions" as follows:

"(b) The appropriations herein provided are to be construed as the maximum sums to be appropriated to and for the several purposes named herein, and the amounts are intended to cover and shall cover the entire cost of the respective items and the same shall not be supplemented from any other source; and, except as otherwise provided, no other expenditures shall be made, nor shall any other obligations be incurred by any department of this State, provided however that nothing herein shall prevent any department head from paying less than the maximum amount set forth herein for any salaried positions."

Secondly, any portion of the surplus may not be used for "traveling expense". Such expenditures is prohibited in the General Rider under "Traveling Expense", as follows:

"(a) It is provided that no expenditure shall be made for traveling expenses by any department of this State in excess of the amount of money itemized herein for said purpose.* * *"

Item 64-d - "Traveling Expense" - under the Jack Stallion itemized appropriation in the General Departmental Appropriation Bill has been vetoed by the Governor. Giving effect to this veto, we have the same situation as if the Legislature had made no appropriation for traveling expenses for the Jack Stallion Division. The above quoted provision of the General Rider to the Departmental Appropriation Bill is an absolute

prohibition against the expenditure of a greater amount than that specifically allowed which amount in this in stance is nil. For reasoning which will support this construction see opinion No. 0-1139 of this department by Hon. Cecil Cammack, Assistant Attorney General.

In conclusion in answer to your specific inquiry, it is our opinion that the effect of the Governor's veto is to eliminate the specific items 64-a (Bookkeeper) and 64-d (Travel expense) under the special Jack Stallion Fund from the General Departmental Appropriation Bill, i.e., Senate Bill 427 of the Forty-sixth Legislature; but that the lump sum appropriation in the special rider of "any fees and/or balances" of the Jack Stallion Special Fund, which was not vetoed by the Governor, would be available to the Jack-Stallion Division of the Department of Agriculture for the employment of necessary personnel and the payment of such salaries and other expenses as are incurred in the enforcement of the provision of the Jack-Stallion Act, H. B. No. 12 of the Forty-fifth Legislature, with the express exception of traveling expenses and the supplementing of funds for specific items.

Trusting that the above fully answers the inquiry in your letter, we are

Yours very truly

ATTORNEY GENERAL OF TEXAS

By(Signed) Dick Stout
Dick Stout
Assistant

DS:OB

APPROVED Aug. 31, 1939
(Signed) Gerald C. Mann
ATTORNEY GENERAL OF TEXAS

APPROVED
OPINION COMMITTEE
BY B. W. B.
CHAIRMAN